IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-240-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| ERIC SHAWN BRADLEY ) | |
| _____ ) | |

Since 2019, the defendant filed one of many motions seeking release from incarceration under the compassionate release provisions of the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). In 2020, this court determined that the defendant's medical conditions did indicate a finding that he had shown extraordinary and compelling reasons for his release. However, the court denied his request after conducting the required review of the factors in 18 U.S.C. § 3553(a), coupled with the defendant's post-sentencing conduct (ECF No. 597). That decision was affirmed by the Fourth Circuit Court of Appeals.

The defendant returns to this court with another motion for compassionate release (ECF No. 660), once again arguing that his medical conditions—which he contends have worsened since his earlier motion—justify his release. He also asserts two additional grounds not raised previously. He first contends that the conditions of confinement at his prison necessitate his release. He also contends that if sentenced today, his sentence would be substantially different because of intervening changes in federal sentencing law.

The government has responded in opposition, arguing that the defendant has not

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

shown an extraordinary and compelling reason for release, and that the defendant's arguments regarding his sentence are without merit.  Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.  The defendant filed numerous replies to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is respectfully denied as to the term of imprisonment.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed

3

with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's

term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has attached to his motion a document purporting to be a request to the Warden for compassionate release, but indicates that the BOP records do not contain any indication that this document was presented to the appropriate staff for review. Attached to defendant's motion is a copy of BOP form S148.05-M8 Request to Staff Form. The document appears to be properly completed and has an attached handwritten letter from the defendant outlining the basis for his request. Although the court will accept at face value the government's representation that it has not received this document, on the record before it, the court will assume the defendant has, in fact, exhausted his administrative remedies and will proceed to consider the motion on its merits.

### DISCUSSION

The defendant is presently serving a 168-month amended sentence for conspiracy to possess and distribution of heroin, money laundering, and being a felon in possession of a firearm. He was sentenced on August 27, 2015.

In July 2019, the defendant filed a motion for relief under the First Step Act of 2018 (ECF No. 507). This court denied the motion because the drug underlying the defendant's conviction— heroin—was not implicated by the changes in the First Step Act (ECF No. 524).       In September 2019, this court granted the government's Rule 35 motion and reduced the defendant's sentence from 210 to 168 months and an amended judgment was entered (ECF No. 529).

In October 2019, the defendant filed a motion to correct a clerical error and resentence him pursuant to Fed. R. Civ. P. 36. This court issued an order (ECF No. 561) advising the defendant that it intended to construe that motion as one pursuant to 28 U.S.C. § 2255 because the defendant was challenging his sentence, in particular his state convictions used under § 851 to enhance his sentence. The court allowed the defendant time to withdraw or amend his original motion to set forth his claims. The defendant objected to the recharacterization (ECF No. 577) and sought to amend his original motion to narrow the scope of his claims to just a challenge to the inaccuracies he claims are in the PSR. This court ultimately denied the motion to correct clerical errors and resentence him under Rule 36 without recharacterizing such motion as one under § 2255 (ECF No. 599).

On March 25, 2020, the defendant filed another motion for compassionate release (ECF No. 555) which this court denied on March 26, 2020 because the defendant had not

exhausted all available administrative remedies (ECF No. 556).

On May 4, 2020, the defendant filed another motion for compassionate release (ECF No. 566) attesting that he suffered from heart disease, high blood pressure, chronic kidney disease, high cholesterol, pulmonary embolism, thrombocytosis, and sickle cell anemia. On June 15, 2020, the defendant filed a sealed motion for compassionate release (ECF No. 576), with subsequent supplements to this motion (ECF Nos. 578, 579, 580, 588, 592, 593, and 594).

On August 10, 2020, this court denied the motion (ECF No. 566) in an order on the merits (ECF No. 597) finding that despite the defendant having shown extraordinary and compelling reasons for consideration of release, upon careful review of the § 3553(a) factors, the defendant's release was not appropriate at that time. The defendant appealed such order with the Fourth Circuit Court of Appeals (No. 20-7242) and the Fourth Circuit affirmed this court's decision in a mandate issued on June 17, 2021.

When the defendant filed his most recent motion for compassionate release on October 4, 2021 (ECF No. 660), he initially did not raise his medical conditions, which he now contends have worsened, as a basis for reducing his sentence. The government's opposition memorandum points out this fact, and proceeds to address the remaining issues raised by the defendant. Subsequently, the defendant has filed supplemental pleadings and letters with this court which once again raise his medical conditions (ECF Nos. 697, 698, 705, 707, 709). The defendant points out, with some authority, that his medical conditions have worsened since his first motion was filed in 2019.

In essence then, this court is now presented with three issues for resolution: (1) the defendant's medical conditions, coupled with the COVID-19 pandemic; (2) the defendant's conditions of confinement at his current BOP institution; and (3) intervening changes in sentencing law that the defendant contends apply to his case. The court will address each of these arguments in turn.

## I. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

8

Medical records indicate that the defendant has contracted COVID-19 and recovered. He has refused any vaccines.

As noted above, the defendant suffers from a number of medical conditions, some of which were present when he committed the crimes that resulted in his current incarceration. Some of the conditions have arisen while the defendant was incarcerated. The court will accept at face value the defendant's assertion that these conditions have worsened. But it cannot be overlooked that this court determined less than two years ago, that the defendant's then-existing medical conditions presented extraordinary and compelling reasons for consideration of his release. However, the § 3553(a) factors, together with the defendant's post-sentencing conduct, necessitated the denial of his earlier motion (ECF No. 597).

So, as to the first portion of the inquiry, the court once again determines that the defendant's medical conditions constitute extraordinary and compelling reasons for consideration of his release.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court will again make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated. The court will address the § 3553(a) factors in turn.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense.* The defendant was one of 10 individuals named in a 5-count Superseding Indictment filed in the District of South Carolina

9

on October 21, 2014. The defendant was named in the following Counts:

> Count 1:  Lesser included offense of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851;
>
> Count 2:  Conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h); and
>
> Count 4:  Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The government filed an Information (ECF No. 232) pursuant to 18 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on three prior state convictions.[2]

The defendant pleaded guilty, pursuant to a written plea agreement (ECF No. 236), to Counts 1 (lesser included offense), 2, and 4 above.

The evidence developed in the investigation reveals that the defendant conspired with several individuals to acquire and distribute multi-gram and multi-ounce quantities of heroin throughout the Columbia, South Carolina area. Some of the controlled substances were imported from North Carolina and others were mailed from cities in India.

---

[2] The prior convictions included (1) Possession of Heroin: Richland County General Sessions Court; Indictment #2002-GS-40-05832; warrant # G-634703; date of offense 7/25/2001; sentenced by Judge Williams on 7/11/2002 to 2 years provided upon service of 6 months Carolina Community Services, the balance is suspended upon 4 years probation; (2) Possession of Cocaine 2nd offense: Richland County General Sessions Court; Indictment # 2004-GS-40-7118; warrant # H518548; date of offense 9/12/2003; sentenced by Judge K. Goode on 7/19/2004 to 1 year concurrent with 1 year probation revocation; and (3) Possession of Heroin: Richland County General Sessions Court; Indictment # 2009-GS-40-4341; warrant # M235133; date of offense 5/19/2009; sentenced by Judge Casey Manning on 5/8/2012 to 2 years and $1,000 fine, provided upon the payment of $200 the balance is suspended with probation for 1 year.

The defendant also engaged in money laundering activities with other co-conspirators by using the drug proceeds to purchase larger quantities of heroin, to rent vehicles for the purpose of transporting heroin, and to purchase airline tickets for travel to New York from Columbia to purchase heroin. He also used couriers, including some of his co-defendants, to transport heroin back to Columbia near the Oriental bus line.

The defendant used and maintained an apartment in Columbia for the purpose of furthering his drug trafficking activities. When the defendant was arrested, Agents found a quantity of marijuana, drug paraphenalia with heroin residue, 17 rounds of 9mm ammunition, 3 rounds of .380 caliber ammunition, a .380 magazine clip, and a Baretta PX4 Storm 9mm handgun. Suffice it to say that the court considers the defendant's offenses of conviction to be serious in nature.

The Presentence Report (PSR) (ECF No. 346), calculated the defendant's total offense level at 39, with a criminal history category of III. This yielded a Guideline sentence of 324 to 405 months. On August 27, 2015, this court granted the government's motion for a downward departure and sentenced the defendant to a term of imprisonment of 210 months, consisting of 210 months as to Count 1; 210 months as to Count 2; and 120 months on Count 4, said terms to run concurrently.

The defendant did not file a direct appeal of conviction and sentence nor did he file a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.

On September 9, 2019, upon motion of the government, the defendant's sentence was

reduced to a term of 168 months consisting of 168 months on Count 1; 168 months on Count 2; and 120 months as to Count 4, said terms to run concurrently.

The defendant has served approximately 96 months of his 168-month amended sentence and is currently scheduled to be released in March 2026. He is housed at FMC Devens.

2. *History and Characteristics of the Defendant.* The defendant is approximately 54 years old. His health problems have been depicted earlier in this order. He has a long history of committing offenses involving drugs, weapons, robbery, and larceny in both South Carolina and New York. By his own admission, before coming to South Carolina, he was involved in a gang that trafficked drugs in New York.

A review of the defendant's criminal history showed he has adult felony convictions in New York and South Carolina which includes the following: grand larceny, 4th degree (January 15, 1987, conviction in New York County Supreme Court in New York, NY), criminal possession of a weapon, 4th degree (February 7, 1995, conviction in the Kings County Supreme Court in Brooklyn, NY), possession of heroin (July 11, 2002, conviction in Richland County, SC), strong arm robbery (July 11, 2002, conviction in Richland County, SC), possession of cocaine, 2nd offense (July 19, 2004, conviction in Richland County, SC), and possession of heroin (May 8, 2012, conviction in Richland County, SC) (ECF No. 346).

The defendant was born in Brooklyn, New York. He has four siblings and described his childhood as good, although he did experience difficulties growing up in substandard

housing. He suffered no abuse during his formative years and remains close to his parents. He is single, having never married and has one adult daughter.

The defendant is a high school graduate and he attended a community college in Brooklyn for a semester. He has received social security disability benefits since 2013. Prior to that, he owned and operated an entertainment and concert promotion company.

*Post Sentencing Conduct*

Commendably, the defendant has not had any disciplinary infractions while incarcerated. He has taken a total of 28 educational and vocational courses including subjects such as anger management, substance abuse, finance, and other courses designed to help him in his rehabilitative efforts.

The defendant stated in an earlier motion that if released, he planned to live with family and his daughter in Brooklyn, New York. It is not clear what his current release plan entails.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific

deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

On this record, the court must conclude that the defendant's release at this time is not appropriate. Although he is of somewhat advanced age, and he is currently experiencing several major health issues, this court cannot ignore the fact that most of these health issues predated his instant crimes that resulted in his current incarceration. Moreover, the defendant pleaded guilty to three serious offenses. He received a great benefit when this court reduced his original sentence from 210 months to 168 months. He has currently served just over one-half of his current sentence.

II.  *Conditions of Confinement*

The defendant claims that his sentence is particularly harsh due to the pandemic, the constant fear and anxiety associated with wave after wave of uncertainty having adverse effect upon his physical and mental health, lack of programming and education that can help him upon his eventual release, and cannot have medical procedures that he's been waiting

for since April 2020.

As an initial matter, this court is without jurisdiction to consider the defendant's request for immediate release as a result of his alleged improper conditions of confinement under the Eighth Amendment. These claims are more properly asserted as a separate action pursuant to 42 U.S.C. § 1983. However, prior to asserting such a conditions of confinement claim, an inmate must exhaust all available remedies with his custodial warden before initiating a law suit. *See* 42 U.S.C. § 1997. Moreover, these conditions of confinement, which are applicable to every incarcerated individual, fail to constitute an extraordinary and compelling reason to justify release.

### III. *Changes in Sentencing Law*

At his initial criminal proceedings in 2014, the defendant was served with a notice that he would be subject to a sentencing enhancement under 18 U.S.C. § 851 and stipulated to at least one prior felony drug conviction in his Plea Agreement. He contends that if he were to be sentenced today on the same charges, his prior felony drug convictions that served as predicates under § 851 when he was sentenced would no longer qualify as predicates in light of the First Step Act and that *United States v. Norman*, 935 F.3d ___ (4th Cir. 2019) also impacts his Guideline sentence.

The government states with regard to § 851 that the changes were not made retroactive by the First Step Act. "As this Court noted in its Order dated August 13, 2020, Bradley's argument is misplaced with regard to the § 851 enhancement and its impact upon his sentence as the changes were not made retroactive by the First Step Act. While it is true

15

that this Act of Congress does amend 21 U.S.C. § 841(b)(1) to alter the type of drug offenses that trigger increased penalties under § 841(b)(1)(a) and (b)(1)(b), it is clear that this change does not apply to [Bradley's] case… Section 401 of the First Step Act provides that the description of qualifying conviction changes, but only for sentencings that take place after December 21, 2018" (ECF No. 599, p. 3–4).

Although these changes are not retroactive, the defendant is correct that should he be sentenced today on the same charges, those prior felony drug convictions would no longer serve as predicates under § 851 as they are not "serious drug offenses" as now required by the First Step Act to enhance convictions under §§ 841(b)(1)(A) and 841(b)(1)(B). Even still, the defendant cannot assert that it constitutes an "extraordinary and compelling reason" for a sentence reduction as it would have no impact upon his ultimate sentence. The defendant would still face a statutory mandatory sentence of 5 years to 40 years and his Guidelines sentence falls within that statutory range. In fact, the § 851 enhancements had no bearing upon the defendant's original sentence other than increasing the length of supervised release required under the statute as his sentence. The defendant's sentence was driven by the vast drug weights, as well as guidelines enhancements for leader/organizer/role, firearms, stash house, and money laundering, not the statutory mandatory/maximum penalties.

As the Amended SRR notes, were the defendant to be sentenced today, he "would be subjected to a mandatory minimum/maximum term of 5 years to 40 years imprisonment with at least 4 years of supervised release, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, on Count One as opposed to a mandatory minimum/maximum term of 10 years to Life

imprisonment with 8 years of supervised release." (ECF No. 686 at 16–17).

As the United States Probation Office outlined in the Amended SRR dated October 20, 2021, "if [Bradley] was being sentenced today post-First Step Act of 2018 and post-Norman, [Bradley's] guideline provisions would remain identical to the provisions determined to be applicable at his original sentencing." Bradley's "Total Offense Level would remain at 39, and the Criminal History Category would remain at III, resulting in a guideline range of 324 to 405 months. With the same 6-level adjustment provided for his 5K1.1/Rule 35(b) reductions, [Bradley's] sentence would remain as 168 month (sic), which is the low end of the guideline range of 168 to 210 months." Exh. C (Amended SRR). The Probation Office notes in the Amended SRR that "the only change would be to his applicable supervised release term, which would be reduced from 8 years to 4 years as it relates to Count 1. *Id*. (italics in original)." (ECF No. 686 at 18; ECF No. 669 at 3).

On the heroin conspiracy count (Count 1), the defendant's base offense level was 32. Then enhancements were added for possessing a firearm in connection with the offense (+2), maintaining a premise for the purpose of manufacturing or distribution of controlled substances (+2), and being an organizer or leader of a criminal activity (+4). These enhancements (less 3 for acceptance of responsibility) resulted in 8 points being added to the defendant's final total offense level of 39.

As to the conspiracy to commit money laundering (Count 2), the base offense level was 36, which was increased by 2 levels because of the provisions of 18 U.S.C. § 1956, and another 4 levels were added because the defendant was an organizer or leader of a criminal

17

activity. This resulted in an adjusted level of 42.

With regard to the felon in possession of a firearm (Count 4), the base offense level was 22. Then 4 points were added for the firearm being used in connection with another felony offense. A cross reference was made pursuant to U.S.S.G § 2K2.1(c)(1)(A) which resulted in an offense level of 36. Another 4 points were added because of the defendant's role in the offense, for an adjusted offense level of 40 on Count 4.

The combined adjusted offense level under U.S.S.G. § 3D1.12(c) was thus 42. Then, 3 points were subtracted for the defendant's acceptance of responsibility, yielding a total combined offense level of 39. With a criminal history category of III, the defendant's Guideline range was 324 to 405 months incarceration. This is well beyond the 10-year mandatory minimum called for by the § 851 enhancement. Accordingly, the defendant's argument that if sentenced today, the § 851 predicates would no longer qualify, is of no avail to him.

Although the defendant's term of incarceration would remain unchanged if sentenced today, all parties agree that his term of supervised release would be reduced from 8 years to 4 years. The government does not oppose a 4-year reduction in the term of supervised release. Accordingly, the court will grant the defendant's motion in part to reduce his term of supervised release.

### IV. *Request for Home Confinement*

To the extent the defendant seeks to have this court direct the BOP to place the defendant in home confinement, however, this court is without authority to do so. The

discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

## CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions (some of which existed at the time of the crimes for which he is now incarcerated). Even so, the defendant's release at this time is not appropriate in light of this court's careful and thorough investigation of the record, an individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein. This court's review of these factors points to the strong conclusion that the defendant's release at this time is not appropriate.

For the foregoing reasons, the defendant's motion (ECF No. 660) is granted in part to reduce his term of supervised release.

IT IS SO ORDERED.

June 14, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge