IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-240-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER ON |
| ERIC SHAWN BRADLEY | ) | MOTION TO RECONSIDER |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion (ECF No. 816) asking this court to reconsider its earlier orders (ECF Nos. 732[1] and 748[2]) which denied him compassionate release under the First Step Act of 2018 and 18 U.S.C. §3582(c)(1)(A).

The government has responded to the defendant's motion, and the defendant has replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues in this matter. Because the defendant's medical condition has worsened significantly since this court's last order, and because the § 3553 factors do not counsel his continued detention, the defendant's motion is granted for the reasons which follow.

---

[1] It its order of June 14, 2022, the court found that the defendant had demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions. However, the court denied the motion based on its investigation of the record and an individualized assessment of the § 3553(a) factors. The court reduced the defendant's term of supervised release from 8 years to 4 years.

[2] This court's order denying the defendant's first motion to reconsider the June 14, 2022 order (ECF No. 732) was upheld by the Fourth Circuit Court of Appeals on January 20, 2023 (ECF No. 823).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### Exhaustion of Administrative Remedies

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

4

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

As the defendant exhausted his remedies in his earlier motion for compassionate release, it is not necessary to do so again on his motion to reconsider. Thus, this court will proceed to consider the motion on its merits.[3]

## DISCUSSION

### I. *The Defendant's Medical Conditions*

On April 10, 2023, President Joseph Biden signed a bipartisan congressional resolution to bring the U.S. national emergency regarding COVID-19 to a close after three years. This court has noted in its earlier orders that the mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.

---

[3] This court is not aware of whether or not the defendant has filed a recent motion for compassionate release directly with the Warden. Additionally, the defendant has not indicated in his filings if he has asked the Warden to place him in home confinement as a result of the BOP physician's new prognosis as of December 9, 2022. This court has no authority to direct the BOP to place a defendant in home confinement under the CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020).

In his motion for reconsideration, the defendant does not rely on the potential danger from COVID-19 as he has in his previous motions.[4] Rather, he contends that new health information from the BOP and the resulting somber medical prognosis as of December 9, 2022, merit this court taking another look at the defendant's health situation and reconsider his early release.

The defendant suffers from a number of serious medical conditions, some of which were present when he committed the crimes that resulted in his current incarceration. Some of the conditions have arisen or worsened while the defendant was incarcerated. Indeed, this court has found in its earlier orders that the defendant's then-existing medical conditions presented an extraordinary and compelling reason for consideration of his release. At the time of this court's earlier orders, however, this court determined, after a thorough and individualized analysis of the defendant's situation, that the § 3553(a) factors necessitated the denial of his earlier motions.

The defendant has approximately 38 months remaining on his 168-month sentence along with a reduced term of supervised release of 4 years. His tentative release date is March 26, 2026. He is housed at Federal Medical Center Devens in Ayer, Massachusetts.

---

[4] The threshold questions are whether a defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant is presently 55 years of age. He suffers from Sickle Cell disease (SCD) which he describes as a "terminal disease with a life ending trajectory." Attached to his most recent motion is a December 9, 2022 medical record from the BOP which states in part:

> The patient has already exceeded his expected life span at birth due to advances in treatment for SCD over the years. Nevertheless, an article in the American Journal of Hematology (2014 May; 89(5): 530-5) indicates that in his cohort (people with more than four sickle cell crises per year, which is what he reports), he is already past his medical life expectancy. Half of his cohort could be expected to die by age 55. His kidneys are failing; his paroxysmal atrial fibrillation is difficult to control. He will soon require surgery for both hips, but his sickle cell status and atrial fibrillation will complicate anesthesia efforts. The BOP's typical criterion for compassionate release is a greater than 50% chance of death in the next 18 months. It is fair to say that he will soon reach the 50+% threshold—and he may very well be there already. Predictions about individuals are notoriously difficult to make, but death within the next 18 months would not be a surprise in this case."

(ECF No. 822-2 at 34).

In a BOP Health Services Clinical Encounter Report attached to one of the defendant's supplemental filings (ECF No. 822), BOP physician Dr. Jeffrey Fennelly notes that the defendant is a 55 year old male at a medical care level 3. At the December 9, 2022 medical appointment with Dr. Fennelly, the defendant presented with pain in his right leg and hip which he says he experiences on a daily basis. He also experiences priapism five times a week. He has a history of sickle cell anemia, essential thrombocytosis, hyperlipidemia, headaches, atrial fibrillation, hypertension, BPH (assuming this refers to benign prostatic hyperplasia), and CKD4 (assuming stage 4 severe chronic kidney disease). He has had past retina surgery and his gallbladder was removed in 2022.

The court invited a response from the government regarding the defendant's motion to reconsider. The government first responded with more than 1,200 sealed pages of medical records of the defendant for the past three years. The government also filed a response (ECF No. 843) in light of Dr. Fennelly's December 9, 2022 prognosis outline. (*Id*.). The government recognized Dr. Fennelly's notation that the defendant likely falls within the BOP's typical criteria for compassionate release. The government also inquired whether the defendant has filed a recent compassionate release request directly with the Warden.

The government notes that two of the defendant's co-defendants have recently been arrested after being fugitives for 8 years. Co-defendant Dockim McKnight pleaded guilty and was sentenced on March 23, 2023 to a term of 60 months incarceration. Co-defendant Corey Xavier Baldwin's case was continued to the July 2023 term of court. The government indicates that if co-defendant Baldwin proceeds to trial, the defendant would be needed as a witness and then his status would be evaluated as to whether a potential reduction in his sentence would be appropriate.

In his reply to the government's response, the defendant states that "Baldwin will undoubtedly be tried for his crimes whether I live or die at the event of a sickle cell crises. To disregard Dr. Fennelly's prognosis and keep me in prison to see if I'm alive for Mr. Baldwin's trial would be severely unjust." (ECF No. 848 at 2). This court agrees.

The defendant then acknowledges that he has serious drug conspiracy crimes involving money laundering, and felon in possession of a gun. He states that his crimes did

8

not involve violence. He also points out that he has served roughly three-quarters (75%) of his sentence. Finally, he notes that he was hospitalized in January and February 2023 for mild sickle cell crises. As a result, the defendant contends that the § 3553(a) sentencing factors now favor his release because it would be unjust to punish him greater than necessary.

The government incorporates its earlier filed responses to the defendant's previous compassionate release motions, including the facts and circumstances of the case, the seriousness of the offense, and the defendant's criminal history.

Finally, the government states that it is cognizant of the doctor's prognosis surrounding the defendant's medical condition and ultimately would defer to the discretion of the court in the matter.

This court continues to find that the defendant has demonstrated an extraordinary and compelling reason for consideration of compassionate release. However, this court cannot grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

The following § 3553(a) factors were set out in this court's order of June 14, 2022 (ECF No. 732), and essentially still apply, except as noted hereafter.

### *The § 3553(a) Factors*

1. *Nature and Circumstances of the Offense.* The defendant was one of 10 individuals named in a 5-count Superseding Indictment filed in the District of South Carolina on October 21, 2014. The defendant was named in the following Counts:

9

> Count 1: Lesser included offense of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851;
>
> Count 2: Conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h); and
>
> Count 4: Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The government filed an Information (ECF No. 232) pursuant to 18 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on three prior South Carolina convictions.[5]

Pursuant to a written plea agreement (ECF No. 236), the defendant pleaded guilty to Counts 1 (lesser included offense), 2, and 4 above.

The evidence developed in the investigation revealed that the defendant conspired with several individuals to acquire and distribute multi-gram and multi-ounce quantities of heroin throughout the Columbia, South Carolina area. Some of the controlled substances were imported from North Carolina and others were mailed from cities in India.

---

[5] The prior convictions included (1) Possession of Heroin: Richland County General Sessions Court; Indictment #2002-GS-40-05832; warrant # G-634703; date of offense 7/25/2001; sentenced by Judge Williams on 7/11/2002 to 2 years provided upon service of 6 months Carolina Community Services, the balance is suspended upon 4 years probation; (2) Possession of Cocaine $2_{nd}$ offense: Richland County General Sessions Court; Indictment # 2004-GS-40-7118; warrant # H518548; date of offense 9/12/2003; sentenced by Judge K. Goode on 7/19/2004 to 1 year concurrent with 1 year probation revocation; and (3) Possession of Heroin: Richland County General Sessions Court; Indictment # 2009-GS-40-4341; warrant # M235133; date of offense 5/19/2009; sentenced by Judge Casey Manning on 5/8/2012 to 2 years and $1,000 fine, provided upon the payment of $200 the balance is suspended with probation for 1 year.

The defendant also engaged in money laundering activities with other co-conspirators by using the drug proceeds to purchase larger quantities of heroin, to rent vehicles for the purpose of transporting heroin, and to purchase airline tickets for travel to New York from Columbia to purchase heroin. He also used couriers, including some of his co-defendants, to transport heroin back to Columbia near the Oriental bus line.

The defendant used and maintained an apartment in Columbia for the purpose of furthering his drug trafficking activities. When the defendant was arrested, Agents found a quantity of marijuana, drug paraphenalia with heroin residue, 17 rounds of 9mm ammunition, 3 rounds of .380 caliber ammunition, a .380 magazine clip, and a Baretta PX4 Storm 9mm handgun. Suffice it to say that the court considers the defendant's offenses of conviction to be serious in nature.

The Presentence Report (PSR) (ECF No. 346), calculated the defendant's total offense level at 39, with a criminal history category of III. This yielded a Guideline sentence of 324 to 405 months. On August 27, 2015, this court granted the government's motion for a downward departure and sentenced the defendant to a term of imprisonment of 210 months, consisting of 210 months as to Count 1; 210 months as to Count 2; and 120 months on Count 4, said terms to run concurrently.

The defendant did not file a direct appeal of conviction and sentence nor did he file a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.

On September 9, 2019, upon motion of the government under Rule 35, the defendant's sentence was reduced to a term of 168 months consisting of 168 months on Count 1; 168 months on Count 2; and 120 months as to Count 4, said terms to run concurrently.

The defendant has served approximately 75% of his 168-month amended sentence and is currently scheduled to be released in March 2026.

2. *History and Characteristics of the Defendant*. The defendant is 55 years old. His serious health problems have been set out earlier in this order. He has a long history of committing offenses involving drugs, weapons, robbery, and larceny in both South Carolina and New York. By his own admission, before coming to South Carolina, he was involved in a gang that trafficked drugs in New York.[6]

The defendant was born in Brooklyn, New York. He has four siblings and described his childhood as good, although he did experience difficulties growing up in substandard housing. He suffered no abuse during his formative years and remains close to his parents. He is single, having never married and has one adult daughter.

---

[6] A review of the defendant's criminal history showed he has adult felony convictions in New York and South Carolina which includes the following: grand larceny, 4th degree (January 15, 1987, conviction in New York County Supreme Court in New York, NY), criminal possession of a weapon, 4th degree (February 7, 1995, conviction in the Kings County Supreme Court in Brooklyn, NY), possession of heroin (July 11, 2002, conviction in Richland County, SC), strong arm robbery (July 11, 2002, conviction in Richland County, SC), possession of cocaine, 2nd offense (July 19, 2004, conviction in Richland County, SC), and possession of heroin (May 8, 2012, conviction in Richland County, SC) (ECF No. 346).

The defendant is a high school graduate and he attended a community college in Brooklyn for a semester. He has received social security disability benefits since 2013. Prior to that, he owned and operated an entertainment and concert promotion company.

*Post Sentencing Conduct*

Commendably, the defendant has not had any disciplinary infractions while incarcerated over the past 8 years. He has taken more than 28 educational and vocational courses including subjects such as anger management, substance abuse, finance, and other courses designed to help him in his rehabilitative efforts.

The defendant stated in an earlier motion that if released, he planned to live with family and his daughter in Brooklyn, New York. It is not clear what his current release plan entails.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment. However, the defendant's lack of a single disciplinary infraction since his incarceration in September 2015 reveals to the court that the defendant has attempted to correct his behavior.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. However, in light of the defendant's recent negative prognosis to his medical condition, it would appear to this court that the defendant's advanced age (55) and poor health would be a deterrence to future criminal conduct and that he would not be a substantial danger to the public.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

## CONCLUSION

As indicated above, the defendant's crime of conviction, together with his criminal history, are fully supportive of a significant sentence. However, this court cannot ignore the severe and terminal medical conditions the defendant currently faces. The defendant has already served at least 75% of his sentence, he has no disciplinary infractions at the BOP for the past 8 years, and life expectancy is very limited.

Accordingly, the defendant's motion is granted and the defendant's sentence is hereby reduced to time served.

The defendant shall be released from the custody of the BOP as soon as his release plan is implemented, and travel arrangements can be made. It is further ordered that upon his release from custody of the BOP, the defendant shall begin serving his 4-year term of supervised release previously imposed.

IT IS SO ORDERED.

April 24, 2023  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge